UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DORIS CLAUNCH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:22-cv-00072-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security* | ) | **ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Doris Claunch seeks judicial review of an administrative decision denying her claim for disability insurance benefits. Ms. Claunch brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the ALJ considering this matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Claunch's Motion for Summary Judgment [R. 8] and **GRANT** the Commissioner's [R. 10].

**I**

Plaintiff Doris Claunch applied for Title II disability insurance benefits on March 5, 2019, alleging disability beginning November 4, 2018. [R. 6-1 at 190.] The Social Security Administration denied her claim on its initial review and again on reconsideration. *Id.* at 109, 126. Ms. Claunch then requested a hearing, which was held before Administrative Law Judge Boyce Crocker. *Id.* at 70. ALJ Crocker denied Ms. Claunch's claim. *Id.* at 63.

The Appeals Council declined to review the claim, rendering the ALJ's decision final. *Id.* at 41. Subsequently, Ms. Claunch filed an action before this Court, seeking review under 42 U.S.C. § 405(g). [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 8; R. 10.]

**II**

To evaluate a claim of disability for Title II disability insurance benefits claims purposes, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id.* § 404.1520(a)(4)(iv). If so, she is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

**A**

ALJ Crocker completed the five-step analysis to determine Ms. Claunch's disability status. [R. 6-1 at 55–63.] He first determined that Ms. Claunch had not engaged in substantial gainful employment during the period in which she claimed to be disabled. *Id.* at 55. Second, ALJ Crocker found that Ms. Claunch had the following severe impairments: fibromyalgia, migraine headaches, thoracic aortic aneurysm, degenerative disc disease of the lumbar spine, obstructive sleep apnea, restless leg syndrome, and hypertension. *Id.* As part of his analysis, ALJ Crocker found that the following conditions were not severe: GERD, hyperlipidemia, kidney stones, unspecified chronic obstructive pulmonary disease with continuing tobacco use, obesity, right index finger release surgery, left knee dysfunction, degenerative disc disease of the cervical spine, and left thyroidectomy. *Id.* at 56. But at step three, ALJ Crocker found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.*

Before proceeding to step four, ALJ Crocker crafted Ms. Claunch's RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, ALJ Crocker determined that:

> the claimant has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b), except she is able to occasionally climb ramps and stairs, but cannot go up ladders, ropes, and scaffolds. She is able to only occasionally stoop, kneel, crouch, or crawl. The claimant needs to avoid concentrated exposure to pulmonary irritants. She needs to avoid even moderate exposure to unprotected heights and moving machinery. She needs to avoid concentrated exposure to a loud noise work environment.

[R. 6-1 at 57.]

To make this finding, ALJ Crocker first determined that Ms. Claunch's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 58. But, ALJ Crocker found that Ms. Claunch's statements regarding the intensity, persistence,

and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. *Id.* at 61. After evaluating Ms. Claunch's statements, treatment records, the opinion of a treating practitioner, and other medical consultants, ALJ Crocker found that the overall record did not support further limitations on her functional capacity. *Id.* at 62.

Next, ALJ Crocker proceeded to step four. *Id.* He considered the testimony of a vocational expert and concluded that Ms. Claunch would be able to perform her past relevant work as a receptionist. *Id*. Because step four indicated that Ms. Claunch was not disabled, ALJ Crocker did not continue on to step five. *Id.* at 63; *see* 20 C.F.R. § 404.1520(a)(4).

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility

4

determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Ms. Claunch takes issue with two findings that ALJ Crocker made during this process. First, Ms. Claunch argues that ALJ Crocker failed to accord sufficient weight to the opinion of her treating practitioner, APRN Amanda Dean. [R. 8-1 at 1245–47.] Second, she asserts that ALJ Crocker should have found several of her conditions to qualify as severe at step two. *Id.* at 1247–51. The Court considers each issue in turn.

1

Ms. Claunch claims that ALJ Crocker failed to abide by the disability regulations in crediting the findings of state agency medical examiners over the opinion of Ms. Claunch's medical provider, APRN Dean. She asserts two problems with ALJ Crocker's analysis. First, she claims that ALJ Crocker did not apply the five-factor analysis mandated by 20 C.F.R. § 404.1520c to determine which medical source is most persuasive. Second, she suggests that the state agency medical examiners, upon whom ALJ Crocker relied, did not have all of the relevant medical evidence before them when they evaluated her health. Neither argument succeeds.

a

ALJ Crocker addressed the only two factors that are mandatory for evaluating the persuasiveness of medical opinions when he considered APRN Dean's submissions. Generally, the disability regulations provide five factors for ALJs to consider when weighing the persuasiveness of medical opinions: (1) supportability, (2) consistency, (3) relationship with the

claimant, (4) specialization, and (5) other factors.[1]  20 C.F.R. § 404.1520c(c)(1)–(5).  Of these, supportability and consistency are the most important.  *Id.* § 404.1520c(b)(2).  ALJs have to consider supportability and consistency in their opinions but are not required to explain any consideration that they gave to the remaining three factors.  *Id.* § 404.1520c(b)(2); *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 U.S. App. LEXIS 33278, at *3 (6th Cir. Dec. 1, 2022).

Under supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  ALJ Crocker concluded that both the state medical examiners and APRN Dean adequately supported their opinions.  [R. 6-1 at 60, 61.]

As to consistency, the regulations provide "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be."  20 C.F.R. § 404.1520c(c)(2).  On review, this Court cannot reweigh the evidence regarding the consistency of APRN Delaney's opinion.  *Nasser*, 2022 U.S. App. LEXIS 33278, at *5.  Moreover, an ALJ can find a medical opinion to be unpersuasive solely because it is inconsistent with other evidence in the record.  *See id.* at *4–5.

The state agency medical consultants, Doctors Elizabeth Estrada, M.D., and Douglas Back, M.D., summarized Ms. Claunch's functional capacity as she "could occasionally lift, carry, push, and pull 20 pounds; frequently lift, carry push, and pull 10 pounds; stand or walk about 6 hours in an 8-hour day; occasionally climb ladders, ropes or scaffolds; and should avoid

---

[1] Previously, the regulations required deference to the opinion of a medical practitioner with a history of treating the claimant.  *Nasser*, 2022 U.S. App. LEXIS 33278, at *6.  But that rule and the cases that discuss it no longer apply. *Id.*

concentrated exposure to fumes, odors, dusts, gases and poor ventilation." [R. 6-1 at 60 (citing (Ex. 1A; 3A)).] APRN Dean declined to assess Ms. Claunch's functional limitations. *Id.* at 61. But she did opine that Ms. Claunch would likely be absent two to four times per month due to medical appointments and could require additional absences if she experienced any exacerbation of her symptoms. *Id.* (citing Ex. 32F).

To determine which medical opinion was more consistent with the overall evidence, ALJ Crocker examined Ms. Claunch's treatment records. *Id.* at 60–61. He found an abundance of evidence to indicate that Ms. Claunch "had negative straight leg raises, a normal range of motion, normal muscle strength, a normal gait and station, and had significant pain relief with treatment and medication." *Id.* (citing twelve batches of treatment records from 2018 through 2020). ALJ Crocker found these descriptions of Ms. Claunch's physical condition to be more consistent with Dr. Estrada and Dr. Back's assessment of Ms. Claunch's RFC than APRN Dean's limited statement that an exacerbation of symptoms could lead to additional absences. *Id.*

While Ms. Claunch claims that ALJ Crocker failed to articulate why he found Dr. Estrada and Dr. Back persuasive, ALJ Crocker's review of the consistency of their opinions is exactly what the regulations call for. *See* 20 C.F.R. § 404.1520c(c)(2). ALJ Crocker extensively reviewed the evidence to see which medical opinion better matched the record. Accordingly, ALJ Crocker's decision to discount APRN Dean's opinion was supported by substantial evidence.

Nevertheless, Ms. Claunch argues that ALJ Crocker cherrypicked the medical record to find that Nurse Dean's opinion lacked consistency. [R. 8-1 at 1245 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).] But what disability applicants sometimes see as

7

cherry picking the record can simply be an ALJ properly performing their job of weighing the evidence in the record. *See White*, 572 F.3d at 284. Ms. Claunch claims that ALJ Crocker ignored evidence of multiple positive straight leg raising tests, an antalgic gait, an MRI of her left knee, and bi-lateral x-rays of her knees while reviewing the consistency of APRN Dean's opinion. [R. 8-1 at 1247.] But this Court's role is not to reweigh the evidence. *Nasser*, 2022 U.S. App. LEXIS 33278, at *5. As shown, substantial evidence supported ALJ Crocker's conclusion that APRN Dean's opinion was not consistent with the overall record. Even if Ms. Claunch's suggestion that substantial evidence can be found to also support the opposite finding, the Court must still uphold the ALJ's opinion. *See Ulman*, 693 F.3d at 713.

b

Ms. Claunch also argues that the opinions of the state agency medical consultants could not have constituted substantial evidence because they did not have access to all the evidence regarding her conditions. [R. 8-1 at 1246.] Generally, if an ALJ relies on a medical source who did not personally examine the patient and if that source did not have an opportunity to review later submitted medical evidence, the ALJ must at least consider the new "facts before giving greater weight to an opinion that is not based on a review of a complete case record." *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)) (applying the old regulations regarding treating source opinions). Ms. Claunch fails to indicate what specific evidence Dr. Estrada and Dr. Back failed to consider. [*See* R. 8-1 at 1246.] Regardless, ALJ Crocker fashioned Ms. Claunch's RFC not only on Dr. Estrada and Dr. Backs' opinions but also on Ms. Claunch's own testimony and treatment records. [R. 6-1 at 58–60.] As Commissioner Kijakzi points out, ALJ Crocker included limitations in the RFC that went beyond those suggested by Dr. Estrada and Dr. Back,

such as a limitation to exposure to loud work environments based on Ms. Claunch's migraine headaches. [R. 10 at 1264; R. 61- at 62.]  Absent a specific piece of medical evidence that neither Dr. Estrada and Dr. Back nor ALJ Crocker failed to consider, the Court concludes that substantial evidence supported the RFC.

### 2

ALJ Crocker's findings regarding the severity of Ms. Claunch's conditions were also supported by substantial evidence.  Ms. Claunch points to five conditions that she feels ALJ Crocker insufficiently accounted for in his analysis.  ALJ Crocker found that Ms. Claunch's chronic obstructive pulmonary disease, obesity, left knee dysfunction, and cervical spine degenerative disc disease did not qualify as severe at step two. [R. 6-1 at 56.]  While ALJ Crocker did find that her migraine headaches qualified as severe, Ms. Claunch argues that he minimized their effects.  *Id.* at 55; [R. 8-1 at 1250.]  Ultimately, Ms. Claunch argues that ALJ Crocker failed to account for all five issues in crafting her RFC. [R. 8-1 at 1251.]  Because the record reflects that ALJ Crocker did account for each of these conditions, substantial evidence supports his decision.

To recap, step two of the disability analysis requires an ALJ to determine whether the claimant suffers from any impairments that qualify as severe.  20 C.F.R. § 404.1520(a)(4)(ii).  To qualify as severe, an "impairment or combination of impairments" must "significantly limit[] your physical or mental ability to do basic work activities . . . ."  *Id.* § 404.1520(c).  If the claimant suffers from no severe impairments, they are not disabled.  *Id.* § 404.1520(a)(4)(ii).  Prior to step four, the ALJ uses all the relevant evidence in the record, including both severe and non-severe impairments, to craft an RFC.  *Id.* §§ 404.1520(e), 404.1545(a)(1)–(2).

Step four is often more relevant to a reviewing court. The ALJ only needs to find one condition to be severe to continue past step two. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009). Because the ALJ must then use all the individual's impairments to craft the RFC, any error in labeling conditions severe or non-severe at step two can be legally irrelevant. *Id.* (citing *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). Ultimately, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

At step two, ALJ Crocker evaluated Ms. Claunch's chronic obstructive pulmonary disease, obesity, left knee dysfunction, and cervical spine degenerative disc disease based on a review of her treatment records. [R. 6-1 at 56.] Ms. Claunch's lungs functioned within normal limits. *Id.* She had a body mass index of 32.24. *Id.* An MRI of her left knee showed only mild soft tissue edema that was consistent with her normal gait and station. *Id.* And a CT scan of her cervical spine showed only mild disc space narrowing. *Id.* Accordingly, ALJ Crocker found that "[t]he record as a whole does not indicate these impairments caused more than minimal limitation in functioning," so they were not severe. *Id.*

Ms. Claunch argues that there is "objective and testimonial evidence of far greater than minimal impacts" from these conditions. [R. 8-1 at 1249.] For example, she claims an MRI validates her claims regarding her knee pain. *Id.* This does little more than suggest that substantial evidence could have supported a different outcome, which does not permit the Court to reverse the result. *See Ulman*, 693 F.3d at 713. Because ALJ Crocker based his determination on pertinent medical records, substantial evidence supports his determination that

10

Ms. Claunch's chronic obstructive pulmonary disease, obesity, left knee dysfunction, and cervical spine degenerative disc disease are not severe. *See Dotson v. Apfel*, No. 99-6163, 2000 U.S. App. LEXIS 25640, at *6 (6th Cir. Oct. 10, 2000) (ALJ's review of medical records can contribute to a finding of substantial evidence).

However, even if ALJ Crocker had erred at step two, the result would be harmless because he incorporated these conditions into Ms. Claunch's RFC. *See Nejat*, 59 F. App'x at 577. Due to her chronic obstructive pulmonary disease, ALJ Crocker found that Ms. Claunch needed to avoid concentrated exposure to pulmonary irritants. [R. 6-1 at 62.] Because of her degenerative disc disease, ALJ Crocker limited Ms. Claunch to light work with further postural limitations. *Id.* In so doing, he also considered medical evidence relevant to her knees. *See id.* at 61 (discussing leg raise tests and Ms. Claunch's gait). The only condition that ALJ Crocker did not explicitly consider while crafting the RFC was obesity.

Even so, any error is harmless. If an ALJ both deems a condition to be non-severe and refuses to assess the functional limitations it imposes, the RFC is not supported by substantial evidence. *Simpson*, 344 Fed. App'x at 191. On the other hand, any error with the step two severity decision is harmless if the ALJ does account for the cumulative effect of the claimant's impairments in the RFC. *Nejat*, 359 F. App'x at 577. ALJ Crocker's decision to limit Ms. Claunch to light activity with further postural limitations likely accounts for her obesity because light work only involves minimally strenuous activities. *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016). Indeed, Ms. Claunch makes no attempt at demonstrating what further limitations her obesity should have required. Where a claimant fails to demonstrate that inclusion of a condition would change the ALJ's assessment of her functional limitations, a claimant's "cursory argument that the ALJ failed to denote [the condition] as a severe limitation

11

is waived." *Hill*, 560 F. App'x at 551–52 (citing *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")); *accord Kirkpatrick*, 663 F. App'x at 649 (no error with RFC where claimant did not demonstrate that his "conditions affected his capacity to perform the physical and mental activities associated with light work."). Because Ms. Claunch merely objects to ALJ Crocker's decision not to consider her obesity as severe without suggesting that it required additional limitations in her RFC, any error is harmless.

Unlike the previous four impairments, Ms. Claunch next takes issue with a condition that ALJ Crocker found to be severe at step two, her headaches. [R. 8-1 at 1249–50.] This time, Ms. Claunch argues that ALJ Crocker used an incorrect diagnostic term for her migraine headaches, which she prefers to call occipital neuralgia, and minimized the limitations that they imposed.[2] *Id.* at 1250. She provides no authority to suggest that these alleged problems amount to reversible error. *See id.*

At step two, ALJ Crocker found that Ms. Claunch's migraine headaches qualified as a severe condition. [R. 6-1 at 55.] Before step four, ALJ Crocker accounted for Ms. Claunch's headaches in crafting her RFC. Therein, ALJ Crocker noted that Ms. Claunch described very bad migraine headaches that occurred two to three times per week. *Id.* at 58. She testified that she received injections for the headaches but that the medicine did not fully alleviate her pain. *Id.* ALJ Crocker compared these descriptions to treatment notes that described the headaches as "not intractable." *Id.* at 59. Treatment notes further confirmed that Ms. Claunch had sought emergency treatment for her migraines and that she improved after medication. *Id.* Ultimately,

---

[2] While a treating physician did refer to her migraines as "occipital neuralgia" and "occipital headaches," the records are largely consistent with ALJ Crocker's description in that they describe Ms. Claunch responding well to treatment. [*See, e.g.,* R. 6-1 at 705.]

12

ALJ Crocker concluded that the record did not support Ms. Claunch's depiction of the severity and frequency of her migraines. *Id.* at 61. Still, he accounted for her migraines in the RFC by precluding her from exposure to loud work environments. *Id.* at 62.

Again, Ms. Claunch argues that the evidence supports a different conclusion than the one chosen by ALJ Crocker. Because her migraines have required emergency medical attention "several times," she asserts that they merited additional limitations in her RFC. [R. 8-1 at 1250.] She does not, however, speculate as to what those limitations might be. *See id.* Because Ms. Claunch repeats her mistake of alleging error in the RFC without articulating what additional limitations should have been imposed, her argument is waived. *See Hill*, 560 F. App'x at 551–52.

Overall, Ms. Claunch's arguments regarding the severity of her conditions are an invitation for the Court to reweigh the evidence that was before ALJ Crocker. Further, Ms. Claunch has not shown any limitations that ALJ Crocker failed to account for in her RFC. For these reasons, the Court finds that substantial evidence supported ALJ Crocker's opinion.

## III

Ms. Claunch objects to several of the decisions that ALJ Crocker made in rejecting her application for disability benefits. While the Court sympathizes with Ms. Claunch's predicament, its role is not to retry her case. Instead, the Court finds that substantial evidence supported ALJ Crocker's opinion. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Ms. Claunch's Motion for Summary Judgment **[R. 8]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 10]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 8th day of February 2023.

Gregory F. Van Tatenhove
United States District Judge